## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GPI, LLC,<br><br>     *5050 W. Hurley's Pond Rd.*<br>     *Wall, New Jersey 07719*<br><br>           Plaintiff,<br><br>          v.<br><br>PATRIOT GOOSE CONTROL INC.,<br><br>     *303 Wyman Street, Suite 300*<br>     *Waltham, Massachusetts 02451*<br><br>– and –<br><br>ELLIOT OREN,<br><br>     *824 The Old Station Court,*<br>     *Woodbine, Maryland 21797*<br>     *(Howard County, Maryland)*<br><br>          Defendants. | Case No._____ |

## VERIFIED COMPLAINT

Plaintiff GPI, LLC, by way of a Verified Complaint against Patriot Goose Control Inc. and Elliot Oren, alleges as follows:

## NATURE OF THE ACTION

1.     This civil action is brought by a franchisor, GPI, LLC, against a former franchisee, Patriot Goose Control Inc., and Elliot Oren under a Franchise Agreement that recently expired but which contains numerous post-expiration obligations with which the Defendants refuse to comply. Oren personally guaranteed that all of the franchisee's obligations under the Franchise Agreement would be punctually performed, and he agreed to be individually bound by the covenants in Section

9 (Confidential Information), Section 15 (Obligations Upon Termination or Expiration), Section 16 (Covenant Not to Compete), Section 20 (Approval and Waiver), and Section 25 (Applicable Law; Dispute Resolution) of the Franchise Agreement, pursuant to a Guarantee, Indemnification, and Acknowledgement attached to the Franchise Agreement and executed by him.

2.     Franchisor now seeks to (a) enforce the narrowly crafted covenant not to compete against its former franchisee; (b) prevent that former franchisee from engaging in unfair competition under the Lanham Act and from infringing Franchisor's trademarks and service marks; (c) recover attorneys' fees due under Franchise Agreement; and (d) require Defendants to comply with their remaining post-expiration obligations in the Franchise Agreement.

## JURISDICTION AND VENUE

3.     The Court has: (a) subject matter jurisdiction over the federal trademark and service mark infringement claims under the Lanham Act pursuant to 28 U.S.C. § 1331 and § 1338(a); and (b) subject matter jurisdiction over the unfair competition claim under the Lanham Act pursuant to 28 U.S.C. § 1338(a) and § 1338(b).

4.     The Court also has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a) because that claim is so related that they form part of the same case or controversy.

5.     The Court has personal jurisdiction over Patriot Goose Control Inc. because Oren—as its president, treasury, secretary, and sole director—directs, controls, and coordinates Patriot Goose Control Inc.'s corporate activities from the State of Maryland where he also resides. Patriot Goose Control Inc.'s principal place of business is therefore in this District. The Court also has personal jurisdiction over Patriot Goose Control Inc. because it committed and/or facilitated acts

of unfair competition and trademark infringement, breached the Franchise Agreement within this District, and conducts significant business activities within the District.

6.      The Court has personal jurisdiction over Oren because he resides in and transacts business within the State of Maryland, and he otherwise committed and/or facilitated acts of unfair competition and trademark infringement and breached the Franchise Agreement within this District.

7.      Venue over this action is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions occurred in this judicial district, namely the partial performance and breach of the Franchise Agreement, as well as commission or facilitation of acts of unfair competition and/or trademark infringement.

## PARTIES

8.      Plaintiff GPI, LLC ("GPI" or "Franchisor") is a New Jersey limited liability company having its principal place of business in New Jersey.  GPI is the Franchisor.

9.      Patriot Goose Control Inc. ("PGC") is a Massachusetts domestic profit corporation, with its business registered in Waltham, Massachusetts, and is a former franchisee.  PGC also maintains its principal place of business in this District because Oren—as its president, treasury, secretary, and sole director—directs, controls, and coordinates PGC's corporate activities from the State of Maryland where he also resides.

10.      Elliot Oren resides in Maryland, and he is the Owner/President of the former franchisee ("Oren," and together with PGC, "Defendants") when it operated under either Patriot Goose Control Inc. or Patriot Goose Control LLC.[1]

---

[1] For ease of reference, GPI refers to Patriot Goose Control Inc. or Patriot Goose Control LLC as the "Franchisee."  Any reference to "Defendants" also includes Patriot Goose Control LLC to the extent applicable, depending on the date to which the allegation refers.

## FACTS

11.     For over twenty years, Franchisor has been engaged in the franchising of a franchise system consisting of distinctive formats, designs, specifications, methods, standards, operating procedures and guidance for Canadian goose/bird control franchises, which use highly trained working border collies to herd Canadian geese off a client's property in a waterfowl-friendly manner (the "Franchised Business").  With waterfowl protective statutes in place, the practices employed by the Franchised Business are one of the few means of dealing with messy Canadian geese in a lawful manner.

12.     Franchisor has nine franchisees licensed throughout the United States (excluding the Defendants' franchisee).

13.     Franchisor's primary trademark and service mark is the composite of the words GEESE POLICE® and the design as shown below:



14.     The composite service mark shown above was registered by Geese Police, Inc., an affiliate of Franchisor through common ownership, under U.S. Registration No. 2,378,757 on or about August 22, 2000 (the "Composite Mark").  A true and correct copy of the results of a trademark electronic search conducted on the United States Patent and Trademark Office site, is attached hereto as **Exhibit A**, and incorporated herein by reference.

15.     Since August 22, 2000, Geese Police, Inc. has permitted Franchisor to license the Composite Mark for use in the Franchised Business, and Franchisor has continuously used the Composite Mark as the trademark and service mark used to identify the Franchised Business.

16.     Under the same arrangement with Geese Police, Inc., Franchisor also uses two additional trademarks and service marks, all of which have been registered by Geese Police, Inc. with the United States Patent and Trademark Office.

17.     The trademark and service mark CALL US TO . . . GET THE FLOCK OUT!® was registered by Geese Police, Inc. under U.S. Registration No. 2,680,858  on or about January 28, 2003.  A true and correct copy of the results of a trademark electronic search conducted on the United States Patent and Trademark Office site, is attached hereto as **Exhibit B** and incorporated herein by reference.

18.     The trademark and service mark GEESE POLICE® was registered by Geese Police, Inc. under U.S. Registration No. 3,257,763 on or about July 3, 2007.  A true and correct copy of the results of a trademark electronic search conducted on the United States Patent and Trademark Office site, is attached hereto as **Exhibit C** and incorporated herein by reference.

19.     **Exhibits A-C** described above are collectively referred to herein as the "Geese Police Marks."  The Geese Police Marks are currently valid and enforceable.

20.     Franchisor also owns and uses distinctive business methods in the operation of the Franchise Business.  These distinctive business methods, together with the other benefits of being a franchisee, including use of the Geese Police Marks, shall hereinafter be referred to as the "Geese Police System."

21.     As part of the Geese Police System, Franchisor provides its franchisees with training in Franchisor's methods of doing business and with the experience, expertise, and know-

how of the Franchisor in the operation of the Franchised Business (collectively the "Geese Police Trade Secrets") to help the franchisees succeed with their own businesses. The training and other aspects of the Geese Police System are also designed to promote and enhance the value of the Geese Police Marks and to encourage uniformity among the franchisees operating under the Geese Police Marks, which itself is beneficial to successful promotion of the Geese Police Marks and the franchisees operated thereunder.

22.     Included among the benefits of the Geese Police System provided and/or made available to franchisees, such as Defendants, are the following: (a) providing initial, additional, and refresher training, along with periodic courses and seminars, including training for border collies to chase away the geese in a lawful manner; (b) making available to franchisee advertising and promotional materials; (c) providing operating manuals and periodic updates thereto, which contain, among other things, Geese Police standards, specifications, procedures, and operating techniques; (d) maintaining a continuing advisory relationship, including written communication and telephone consultation in the areas of advertising, marketing, training and dog care and general business operations for use by all franchisees; and (e) hosting a website that lists the current franchise locations, provides the contact information, websites, and biographical information of the current franchisees, and allows potential customers to get in touch with the Franchisor for services in their location.

23.     Since the Franchisor began franchising, Franchisor has licensed the Geese Police Marks to its franchisees for use in specific geographic areas for the term of their franchise agreements. Franchisor also grants its franchisees the right to enjoy the benefits of using the Geese Police System and the Geese Police Trade Secrets.

24.     Franchisees are not, however, authorized to use the Geese Police Marks, the Geese Police System, or the Geese Police Trade Secrets following the expiration or termination of their franchise agreements.

25.     Franchisor has for many years spent large sums of money marketing and promoting the Geese Police Marks that have become identified with the Franchised Business by consumers and which use specially developed business methods, which are proprietary and comprise the Geese Police System.

26.     The Franchised Business has been the subject of significant national media coverage including without limitation NBC News, The Washington Post and Washington Times.

27.     As a result of this extensive marketing and promotion, valuable goodwill has been developed in the franchised areas throughout the United States among consumers for the Geese Police Marks and the Geese Police System for services provided under the Geese Police Marks and the Geese Police System, identifying Franchisor as their sponsor and source.

28.     In fact, Defendants themselves benefited from the goodwill and media interest in the Franchised Business.  A June 20, 2023 cover story published in the Boston Globe highlighted Defendants as both being part of the Geese Police System and using trained border collies in its "'proprietary system of harassment' to scare away geese creating a nuisance in public spaces," as Oren was quoted as saying to the newspaper.  *See* Ashely Soebroto, *Geese Police has "very effective" method of chasing geese away. It involves border collies*, BOSTON GLOBE (June 20, 2023 5:42 a.m.)*, available at* https://www.bostonglobe.com/2023/06/20/business/goose-loose-heres-who-call/.

*Defendants Became a Franchisee and Operated as Geese Police® of Boston Metro*

29.     Oren has been involved with the Franchised Business since at least 2007. Beginning in 2007, Oren started as a dog handler with Geese Police of Central Maryland, and he later expanded his role to become involved in the sales efforts for the Franchised Business.

30.     In 2014, Oren became the owner of a Geese Police franchisee in the Greater Boston Area.  At that time, Patriot Goose Control LLC and GPI entered into a Franchise Agreement on or about July 21, 2014 (the "Original Franchise Agreement").  Oren executed the Original Franchise Agreement as Managing Member of Patriot Goose Control LLC d/b/a Geese Police of Boston Metro.  A true and correct copy of the Franchise Agreement is included as **Exhibit D** and incorporated herein by reference.

31.     The parties have renewed the Franchise Agreement numerous times since Defendants became a franchisee, and most recently on July 26, 2021 for a two-year renewal period that extended from July 21, 2021 to July 20, 2023 under the same terms and conditions as set forth in the Original Franchise Agreement (the "Franchise Agreement Renewal").  In the Franchise Agreement Renewal, Oren again executed the contract, though this time on behalf of a new entity, Patriot Goose Control Inc. d/b/a Geese Police of Boston Metro.  A true and correct copy of the Franchise Agreement Renewal is attached as **Exhibit E** hereto and incorporated herein by reference.  Both the Original Franchise Agreement and the Franchise Agreement Renewal are collectively referred to herein as the "Franchise Agreement."

32.     In the Franchise Agreement, the parties agreed that Defendants could conduct business operations of the Franchised Business in Suffolk, Norfolk, Middlesex Counties, eastern half of Worchester County (East of Routes 290/190) and northern halves of Bristol and Plymouth

Counties (going north across the counties from Providence to Middleboro to Manomet) (the "Protected Territory").

33.     From approximately July 21, 2014 – July 20, 2023, Defendants operated as a franchisee in the Protected Territory, as evidenced by their continuing use of the Geese Police System and Geese Police Marks while operating a Franchised Business.

34.     Under Exhibit C to the Franchise Agreement, entitled Guarantee, Indemnification, and Acknowledgement, Oren personally guaranteed that the obligations of the Franchisee under the Franchise Agreement would be performed, and acknowledged and agreed, among other things, to be bound individually by the franchisee's obligations upon termination and to the covenant not to compete (the "Personal Guarantee").

35.     Under the Franchise Agreement, Franchisor granted Defendants the right (a) to establish and operate a franchised business under the System and using the Proprietary Marks and (b) to use the Proprietary Marks and the System solely in connection therewith.

36.     In exchange, Defendants agreed to pay a monthly royalty fee and deliver monthly reports to the Franchisor.  Defendants further agreed to all other provisions of the Franchise Agreement, including the obligation to cease operating the Franchised Business and to cease using the Geese Police System and Geese Police Marks upon termination of the Franchise Agreement.

37.     With the consent of Franchisor and under the terms and conditions of the Franchise Agreement, Defendants operated a Franchised Business in the Protected Territory.

38.     During the nine-year period, Franchisor provided, or made available, to Defendants initial and ongoing training; trained border collies for use in the Franchised Business; a copyright-protected Confidential Operating Manual and periodic updates; operations and business support via direct telephone and email contact with Franchisor's Founder and President David C. Marcks;

periodic visits aimed at increasing business opportunities; and regularly scheduled sales demos for prospective clients.  Franchisor also provided Defendants with a Geese Police email address, which they used until their access was recently terminated.

39.     Defendants did not have any prior experience in the operation of Canadian goose/bird control business using highly trained working border collies before Oren became an employee of Geese Police of Maryland, and later, the owner of the Geese Police of Boston as a GPI franchisee.  Defendants essentially learned everything they know about the Franchised Business as a result of their participation in the Geese Police System and the training, business development, and operations support that they received from Franchisor.  Defendants operated their business as one the franchisees of GPI and enjoyed the benefits of use of the Geese Police Marks, the Geese Police System, and the Geese Police Trade Secrets without issue for approximately nine years.  Franchisor has fully performed its obligations under the Franchise Agreement as evidenced by the complete absence of default notices from the Defendants until now, when Defendants have attempted to manufacture a dispute to rid themselves of their post-expiration obligations under the Franchise Agreement.

### *Defendants Purport to Declare the Franchise Agreement "Null and Void"*

41.     Defendants' Franchise Agreement with Franchisor expired by its own terms on or about July 20, 2023.

42.     One month earlier, however, GPI received a letter from Defendants' counsel declaring that GPI's purported failures to provide training, marketing and promotional support, and written advice on the conduct of the business, as well as to conduct period inspections, somehow rendered the Franchise Agreement's terms "null and void" as of the end date (the "June Letter").  The June Letter also purported to declare that "both the definition of the 'System' and

the noncompetition clause in the Agreement are overly broad and over inclusive, and thus unenforceable."

43.     For its part, GPI attempted to informally resolve this dispute before resorting to filing this lawsuit.  In August 2023, GPI's General Manager attempted to contact Oren to discuss with him rejoining the Geese Police System and the issues raised in the June Letter.  But this outreach went unanswered, and in fact, only led Oren's counsel to resend the June Letter to GPI.

44.     In a letter dated August 16, 2023, Franchisor sent Defendants a letter to remind them of their post-expiration obligations under the Franchise Agreement, including the requirement that they abide by the non-compete (the "August Letter").  A true and correct copy of the August Letter is attached hereto as **Exhibit F** and incorporated herein by reference.

45.     This outreach, too, went nowhere.  And since then, Defendants have continued to flout the post-expiration obligations in the Franchise Agreement with impunity, joining several other former GPI franchisees engaged in an open revolt against the Franchised Business, with their unfounded copycat claims.

### *Defendants Are Legally and Contractually Obligated to Discontinue Using the Geese Police Marks and the Geese Police System*

46.     Since June 20, 2023, Defendants have, among other things, (a) continued to operate the Franchised Business and use the Geese Police System in the Protected Territory (b) refused to disassociate themselves completely from the Franchised Business and cease use of the Geese Police Marks; and (c) refrain from competing in business with the Franchisor.

47.     Upon expiration of the Franchise Agreement, Defendants are required immediately to discontinue all use of the Geese Police Marks and the Geese Police System and to take all necessary steps to disassociate themselves from these items.

48.     Section 15—entitled Obligations Upon Termination or Expiration—begins by stating that "[u]pon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate," which includes contractual privileges to use the Geese Police Marks, the Geese Police System, or the Geese Police Trade Secrets.  *See* **Exhibit D** at 24**.**

49.     Section 15.1, for instance, provides that "Franchisee shall immediately cease to operate the Franchised Business, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Franchisor."  *Id.* at 24.

50.     Section 15.2 of the Franchise Agreement further provides that, upon expiration of the Franchise Agreement, "Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures, and techniques associated with the System; and the Proprietary Mark 'Geese Police' and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use, without limitation, all signs, advertising materials, displays, stationery, forms, products, and any other articles which display the Proprietary Marks."  *Id.* at 24.

51.     Despite the expiration of the Franchise Agreement, Defendants continue to use, to Franchisor's detriment, the Geese Police Marks and the Geese Police System.

52.     Among other things, Defendants maintain a social media presence on Facebook for "Patriot Goose Control Inc."—a competing goose control business—which still uses the name "Geese Police" in its URL (https://www.facebook.com/geesepoliceboston) contains photographs that depict the Geese Police Marks, such as in the image depicted below:



53.     Defendants also maintain a social media presence on Instagram in which they hold himself out as being affiliated with Geese Police, such as in the image depicted below:



54.     In addition to using the Composite Mark and the name "GEESE POLICE," these images posted by Defendants to Instagram also use the federally protected trademark and service mark—"GET THE FLOCK OUT"—as a hashtag in the comment to the post, as depicted below:



55.     Defendants' Instagram page further links to the Boston Globe article describing his work as a Geese Police franchisee, just as recent as two months ago, again trading on and benefiting from the goodwill that the Franchisor has built in the Geese Police System for decades.

56.     In addition, Oren maintains a social media presence on LinkedIn (https://www.linkedin.com/in/elliot-oren-103b4835/), in which he holds himself out as still being the current owner of "Geese Police Boston Metro" under his "Experience."

57.     As for Patriot Goose Control, Defendants maintain a website for this competing business (http://patriotgoosecontrol.com/) in which PGC likewise holds itself out as affiliated with the Franchise Business and also uses the Geese Police Marks.

58.    On the "About Us" page of the website (http://patriotgoosecontrol.com/aboutus),

for example, the website states that Patriot Goose Control has been operating since 2014—when

Defendants became a Geese Police franchisee—and then explicitly references "Geese Police and

the "Geese Police Methods" in describing the company's highlights:



59.    The "About Us" page also goes so far as to link to the website for Geese Police Inc.

to "find a Geese Police location near you" as depicted in the image above.

60.    The "About Us" page also includes information about Defendants' trained border

collies, and again, affiliates them with the Franchised Business by saying that "Blitz was a

champion sheep herder before coming to work full-time for Geese Police" as depicted in the image

below:



### MEET OUR DOGS

**KENDA**

Kenda's name means "child of cool, clear water", and fittingly, her favorite part of her job is swimming after the geese.

**BLITZ**

Blitz was a champion sheep herder before coming to work full-time for Geese Police.

61.     Defendants' continued use of the Geese Police Marks contravenes their post-term obligations under the Franchise Agreement and constitutes a violation of the Lanham Act.

**Defendants are Barred by the Covenant Not to Compete to Operate any Business that Uses or Sells Border Collies for the Purpose of Canadian Geese Control**

62.     Defendants continue to service the same customer accounts using the Geese Police System that they serviced prior to the termination of the Franchise Agreement.  Defendants have also shown that they have no present intention of ceasing performance.

63.     Section 15.9 of the Franchise Agreement, however, provides that, upon termination or expiration, Franchisee shall comply with the covenants contained in Section 16.3 of this Agreement.   Under Section 16.3 of the Franchise Agreement, Defendants agreed that the

"Franchisee shall not, for a continuous uninterrupted period of two (2) years commencing upon . . . expiration of this Agreement . . . either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person or legal entity, own, maintain, operate, engage in, be employed by, provide assistance to, or have any interest in (as owner or otherwise) any business that: (i) involve the inhabitation of property by, and control of, birds and waterfowl; and (ii) is, or is intended to be, located at or within: [(a)] the county or municipality in which the Approved Location is located; or [(b)] the Protected Territory; or [(c)] one hundred fifty (150) miles of the Approved Location; or [(d)] one hundred fifty (150) miles of any business operating under the Proprietary Marks[.]"[2]

64.     Defendants' continued operation of the Geese Police business in the same territory as the Protected Territory directly violates the covenant not to compete contained in the Franchise Agreement.

### The Post-Expiration Obligations Survive Expiration of the Franchise Agreement

65.     These mutually agreed upon, post-expiration obligations—including the non-compete and the disassociation requirements—survive the expiration of the Franchise Agreement, as does Oren's Personal Guarantee of their performance.

66.     Section 23.2 of the Franchise Agreement expressly provide that "[a]ny provision or covenant in this Agreement which expressly or by its nature imposes obligations beyond the expiration, termination (regardless of cause for termination) or assignment of this Agreement shall survive such expiration, termination, or assignment, including, but not limited to, Sections 9, **15**, **16**, 23, and 24." **Exhibit D**, at 33 (emphasis added).

---

[2] Franchisor has elected to delineate this particular geographic scope because the Protected Territory, including the 150-radius from an approved location, has a nexus to the driving distance able to or typically covered by franchisees on their routes.

67.     The Personal Guarantee in the Franchise Agreement likewise provides that "[t]his Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, ***and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms***." *Id.*, Ex. C (emphasis added).

### *Franchisor Has Suffered Irreparable Harm and Other Damages*

68.     Unless and until Defendants are permanently enjoined from using the Geese Police Marks and the Geese Police System, from breaching the covenant not to compete contained in the Franchise Agreement, from misappropriating the Geese Police Trade Secrets, and from unfairly competing with the Franchisor, Franchisor and its franchisees are being and will continue to be irreparably harmed in the nature of:

(a)     Confusion of customers who intend to do business with a legitimate Geese Police franchisee;

(b)     Harm to customer goodwill and the confidence and trust customers repose in Franchisor and its franchisees;

(c)     Disturbance of Franchisor and its franchisees' relationships with customers;

(d)     Harm to Franchisor's business reputation;

(e)     Loss of confidence of Franchisor's remaining franchisees which rely on Franchisor to enforce covenants not to compete;

(f)     Loss of the integrity of the Geese Police Marks and the Geese Police System for which Franchisor's remaining franchisees continue to pay under their respective Franchise Agreements; and

(g)     Harm to the continued viability of Franchisor's franchise system.

69.     In addition, irreparable harm is resulting from Defendants' breach of their covenant not to compete.  Defendants' continued operation of their business interferes with Franchisor's ability to continue the Franchised Business in the Protected Territory through an existing or new franchisee.

70.     Moreover, it is typical for other franchisees to monitor the actions of Franchisor in response to franchisees like Defendants that continue to operate a business in violation of the covenant not to compete of the Franchise Agreement.  This is particularly true when the former franchisee has been in the system for a substantial period of time.

71.     Indeed, Oren is currently following the lead of at least three other former franchisees, who have decided to make unfounded copycat claims against GPI and the franchise system in what has become an open revolt.  GPI has likewise been forced to bring lawsuits and/or arbitration proceedings against these former franchisees to enforce the obligations to which they agreed.  This has become disastrous for the Geese Police System.

72.     If Defendants are permitted to breach their covenant not to compete, their breach will establish a dangerous precedent and potentially encourage more franchisees to "break away," leave the Geese Police System with impunity, and continue to operate their existing businesses under a different name at or near the location of their former Franchised Business.  This will also prevent Franchisor from providing geese control services to the former customers of PGC.

73.     All of this conduct by Defendants causes an irreparable loss of customer goodwill associated with the Geese Police Marks and the Geese Police System and the businesses operated thereunder.  The value of being part of the franchise network of Franchisor and paying royalty fees is greatly diminished if franchisees may run competing business both during and after the termination of the Franchise Agreement.

## COUNT I: TRADEMARK AND SERVICE MARK INFRINGEMENT UNDER SECTION 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

74.     Franchisor incorporates by reference each of the allegations contained in Paragraphs 1 through 73 of the Complaint as if each was separately restated here.

75.     Defendants are currently using the Geese Police Marks and the Geese Police System even though the Franchise Agreement has expired, and Franchisor no longer consents to Defendants' use of the Geese Police Marks and the Geese Police System.

76.     Defendants' conduct willfully violates their obligations to Franchisor and flagrantly violates the Lanham Act.

77.     Defendants' use of the Geese Police Marks in connection with the operation of their business is likely to cause confusion or mistake in the minds of the public and cause purchasers to believe that the services being offered or intended to be offered were the services of Franchisor, and thus constitute an infringement of Franchisor's trademark and service mark rights.

78.     Defendants' infringement was and is a willful attempt to deceive the public, trade upon the goodwill of Franchisor and cause irreparable harm to Franchisor.

79.     The conduct of Defendants constitutes fraud and deceit upon the consuming public in the United States.

80.     Said conduct has resulted and will continue to result in the loss of Franchisor's goodwill and have caused and will continue to cause Franchisor's irreparable injury.

81.     As a result of Defendants' intentional, willful and deliberate infringement of the Geese Police Marks, Franchisor is entitled to injunctive relief, damages, costs and attorneys' fees.

## COUNT II:  UNFAIR COMPETITION UNDER SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

82.     Franchisor incorporates by reference each of the allegations contained in paragraphs 1 through 81 of the Complaint as if each was separately restated here.

83.     Defendants are in the business of providing geese control through the use of trained border collies.

84.     Defendants are using the Geese Police Marks per se, and in a manner confusingly similar to the Geese Police Marks used by Franchisor and its franchisees.

85.     The business format currently used by Defendants is the same or closely related to the Geese Police System that has been developed by Franchisor and its predecessors.

86.     Defendants' continued use of Geese Police Marks and Geese Police System is likely to cause mistake or confusion in the marketplace in the minds of purchasers and lead them to believe that Defendants' services are those of Franchisor or one of its authorized franchisees.

87.     Use by Defendants of the Geese Police Marks and the Geese Police System in connection with its services constitutes unfair competition under the Lanham Act.

88.     Defendants are deliberately attempting to trade upon the goodwill of Franchisor by selling and advertising their services as the services of Franchisor and continuing to provide services to the same customers who first engaged Defendants as a franchisee of the Geese Police Marks and Geese Police System.

89.     The acts of Defendants constitute a fraud and deceit upon the consuming public in the United States.

90.     Said conduct has resulted and will continue to result in the loss of Franchisor's goodwill and have caused and will continue to cause Franchisor's irreparable injury.

91.     As a result of Defendants' intentional, willful and deliberate infringement of the Geese Police Marks, Franchisor is entitled to injunctive relief, damages, costs and attorneys' fees.

## COUNT III:  BREACH OF FRANCHISE AGREEMENT – VIOLATION OF THE COVENANT NOT TO COMPETE

92.     Franchisor incorporates by reference each of the allegations contained in paragraphs 1 through 91 of the Complaint as if each was separately restated here.

93.     The Franchise Agreement is a valid, enforceable contract between GPI and Defendants.  The Guarantee also is a valid, enforceable contract between GPI and Oren.

94.     GPI has fully performed all its obligations under the Franchise Agreement.

95.     Defendants have breached their obligations under the Franchise Agreement by, among other things, violating and are continuing to violate their covenant not to compete in the Franchise Agreement by operating a geese control business using trained border collies.  This business is being operated within Defendants' former Protected Territory because it is being operated at precisely the same location as the business formerly authorized to operate pursuant to the Franchise Agreement.

96.     The conduct of Defendants is willful, intentional and unprivileged, and has caused and is continuing to cause irreparable harm as well as monetary damages to Franchisor.

97.     As a result of Defendants' intentional, willful and deliberate breach of contract, Franchisor is entitled to injunctive relief, damages, costs and attorneys' fees.

## COUNT IV:  BREACH OF FRANCHISE AGREEMENT – VIOLATION OF POST-EXPIRATION OBLIGATIONS

98.     Franchisor incorporates by reference each of the allegations contained in paragraphs 1 through 97 of the Complaint as if each was separately restated here.

99.    Defendants were required upon expiration to comply with their post-expiration obligations, as set forth in Section 15 of the Franchise Agreement, including, without limitation, to (a) cease to operate the Franchised Business; (b) disassociate from the Franchised Business; (c) deliver to Franchisor the customer lists relating to the Franchised Business; and (d) return all material containing the confidential information of the Franchisor.

100.    Defendants have failed to comply with these remaining post-expiration obligations in breach of the Franchise Agreement.

101.    As a result, GPI has been required to retain the services of attorneys to represent it in this proceeding and is therefore entitled to recover its attorneys' fees and costs as a result of Defendants' breach of the Franchise Agreement.  GPI will continue to incur attorneys' fees and costs in this proceeding.

102.    As a result of Defendants' intentional, willful and deliberate breach of contract, Franchisor is entitled to injunctive relief, costs, and attorneys' fees.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, GPI, LLC demands an award in its favor and against Defendants with respect to all Counts of the Complaint as follows:

A.    That Defendants and their officers, owners, agents, servants, employees, attorneys, and all persons in active concert or participation with them be permanently enjoined from using the Geese Police Marks, Geese Police Trade Secrets, and the Geese Police System, or any elements thereof, in connection with the operation of any business that offers products or services which involve the inhabitation of property by, or control of, birds and waterfowl, including but not limited to the business currently being operated in the Protected Territory, as more fully described in the Franchise Agreement.

23

B.     That Defendants be required to make such changes in the signage of all vehicles, cease using any articles or other instrumentalities that contained the Geese Police Marks, and cease any communications that would identify Defendants are being associated with the Franchisor.

C.     That Defendants be required to notify all of its former customers in a written communication approved by Franchisor that they are no longer conducting a geese control business using trained border collies and request each such customer to contact the Franchisor if they are interested in continuing such service.

D.     That Defendants and their officers, owners, agents, servants, employees, attorneys, and all persons in active concert or participation with them be permanently enjoined for a period of two (2) years from the date of entry of such injunction from, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person or legal entity, own, maintain, operate, engage in, be employed by, provide assistance to, or have any interest in (as owner or otherwise) any business that: (i) involve the inhabitation of property by, and control of, birds and waterfowl; and (ii) is, or is intended to be, located at or within the Protected Territory.

E.     That Defendants be permanently enjoined from effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the directives of the injunction.

F.     That Defendants be required to return to Franchisor the customer lists, Manual, and all other records, correspondence, and instructions containing confidential information relating to the operation of the Franchised Business (and any copies thereof) to Franchisor.

G.     That Defendants be required to assign all Franchisee's contracts with its customers to Franchisor.

H.     That Defendants be required to cancel any assumed name registration or equivalent registration obtained by Franchisee which contains the mark "Geese Police" or any other Geese Police Marks.

I.     That Defendants be required to make a verified report within thirty (30) days setting forth all actions taken by the Defendants to comply with the injunction and the relief granted herein and dates such actions were taken.

J.     That GPI be awarded compensatory and liquidated damages in an amount to be proven.

K.     That GPI be awarded treble damages, statutory damages, and all other legal and equitable relief available under the Lanham Act.

L.     That GPI be awarded its reasonable costs and expenses, including reasonable attorneys' fees as authorized under the Franchise Agreement.

M.     That GPI be given such other and further relief as may be deemed just and proper.

BUCHANAN INGERSOLL & ROONEY PC

/s/ Gretchen L. Jankowski

Gretchen L. Jankowski (MD Fed. Bar ID: 19473)
Matthew C. Pilsner (*pro hac vice motion forthcoming*)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
412-562-8800 (o)
412-562-1041 (f)
gretchen.jankowski@bipc.com
matthew.pilsner@bipc.com

Karima Tawfik (MD Fed. Bar ID: 30624)
1700 K Street, NW, Suite 300
Washington, D.C. 20006
202-452-7996 (o)

202-452-7989 (f)
karima.tawfik@bipc.com

*Attorneys for GPI, LLC*

## **VERIFICATION**

I, Jeremy Brown, of full age, declare as follows:

1.      I am the General Manager of Franchisor GPI, LLC, the Plaintiff in this action.  I am the person most familiar with the facts underlying this action, and am authorized to make this Verification on behalf of GPI, LLC.

2.      I have reviewed the foregoing Verified Complaint and the factual allegations set forth therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury of the laws of the United States of America that the foregoing statements are true and correct.

Dated:  8-28-2023

Jeremy Brown