**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| GPI, LLC, | |
|        Plaintiff, | |
|        v. | Case No. 1:23-cv-02360 |
| PATRIOT GOOSE CONTROL INC. and ELLIOT OREN, | |
|        Defendants. | |

## PLAINTIFF GPI LLC's MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................. 1

II.    STATEMENT OF FACTS ..................................................... 1

    A.    Franchisor Develops the Geese Police System ............................. 1

    B.    Defendants Became a Franchisee and Operated as Geese Police® of Boston Metro ................................................................. 4

    C.    Defendants Purport to Declare the Franchise Agreement "Null and Void" ........... 6

    D.    Defendants Are Legally and Contractually Obligated to Discontinue Using the Geese Police Marks and the Geese Police System and Return Confidential Material ................................................................. 7

        1.    Defendants Must Disassociate from the Geese Police System ................. 8

        2.    Defendant Must Abide by the Limited Non-Compete ............................... 8

    E.    Defendants Refuse to Disassociate or Abide by Their Post-Expiration Obligations ................................................................. 9

III.    STANDARD OF REVIEW .................................................... 14

IV.    ARGUMENT ................................................................. 14

    A.    Franchisor is Likely to Succeed on the Merits of Its Claims ................................ 14

        1.    Counts I & II:  The Lanham Act Claims for Trademark and Service Mark Infringement and Unfair Competition ..................................................... 14

            a.    The Federally Registered Geese Police Marks are Incontestable . 15

            b.    Defendants Have No Authorization to Use the Geese Police Marks ................................................................. 15

            c.    Defendants Still Use the Marks in Their Sales and Marketing Efforts ................................................................. 16

            d.    Defendants' Infringement Causes Consumer Confusion .............. 16

        2.    Count III: Breach Of Franchise Agreement – Violation Of The Covenant Not To Compete ................................................................. 17

    B.    Franchisor Will Suffer Irreparable Harm Without Injunctive Relief ................... 19

    C.    Significant Injury To Franchisor Outweighs Any Harm To Defendants ............. 21

  D.  Franchisor's Requested Injunctive Relief Is In The Public Interest ..................... 22

  E.  GPI Will Post a Reasonable Bond ........................................................................ 23

V.  CONCLUSION ................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cap. One Fin. Corp. v. Sykes*,
   No. 3:20CV763, 2021 WL 2903241 (E.D. Va. July 9, 2021) ................................................22

*Cmty. First Bank v. Cmty. Banks*,
   No. CIV. RDB 04-1359, 2005 WL 1204589 (D. Md. May 20, 2005)....................................15

*Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*,
   868 F. Supp. 2d 468 (D. Md. 2012) .......................................................................................19

*Dewberry Engineers Inc. v. Dewberry Grp., Inc.*,
   No. 1:20-CV-610-LO-IDD, 2022 WL 1439105 (E.D. Va. May 6, 2022), *aff'd*,
   No. 22-1622, 2023 WL 5062022 (4th Cir. Aug. 9, 2023) .......................................................21

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
   952 F.2d 802 (4th Cir. 1991) .................................................................................................19

*Housemaster SPV LLC, v. John T. Burke, Jr.*,
   No. CV2113411MASTJB, 2022 WL 2373874 (D.N.J. June 30, 2022) ...........................18, 19

*ICENY USA, LLC v. M & M's, LLC*,
   421 F. Supp. 3d 204 (D. Md. 2019).............................................................................17, 19, 21

*Innovative Value Corp. v. Bluestone Fin., LLC*,
   No. 09–cv–0111–DKC, 2009 WL 3348231 (D. Md. Oct. 15, 2009) .....................................19

*Issa v. School District of Lancaster*,
   847 F.3d 121 (3d Cir. 2017)...................................................................................................23

*JTH Tax, Inc. v. Geraci*,
   No. 2:14CV236, 2014 WL 4955373 (E.D. Va. Oct. 2, 2014) ................................................20

*League of Women Voters of N. Carolina v. North Carolina*,
   769 F.3d 224 (4th Cir. 2014) .................................................................................................14

*Ledo Pizza Sys., Inc. v. Singh*,
   983 F. Supp. 2d 632 (D. Md. 2013).............................................................................19, 21, 22

*Living Legends Awards for Serv. to Human., Inc. v. Hum. Symphony Found., Inc.*,
   No. CV PX 16-3094, 2017 WL 3868586 (D. Md. Sept. 5, 2017) .........................................21

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
   507 F.3d 252 (4th Cir. 2007) .................................................................................................16

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*,
    243 F.3d 789 (4th Cir. 2001) ...................................................................19

*Mayson-Dixon Strategic Consulting, LLC v. Mason-Dixon Polling & Strategic
    Consulting, Inc.*,
    324 F. Supp. 3d 569, 579-80 (D. Md. 2018)............................................16

*Meineke Car Care Centers, Inc. v. Bica*,
    No. 3:11-CV-369-FDW-DCK, 2011 WL 4829420 (W.D.N.C. Oct. 12, 2011) .....................20

*Merry Maids Ltd. P'ship v. Kamara*,
    33 F. Supp. 2d 443 (D. Md. 1998) ...........................................................16

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes
    Powell*,
    915 F.3d 197 (4th Cir. 2019) ...........................................................14, 19

*NaturaLawn of Am., Inc. v. W. Grp., LLC*,
    484 F. Supp. 2d 392 (D. Md. 2007)...................................................18, 20, 22

*Pashby v. Delia*,
    709 F.3d 307 (4th Cir. 2013) ...................................................................14

*R/C Theatres Mgmt. Corp. v. Metro Movies, LLC*,
    44 F. Supp. 3d 626 (D. Md. 2014) ...........................................................16

*Retail Servs., Inc. v. Freebies Publ'g*,
    364 F.3d 535 (4th Cir. 2004) ...................................................................15

*Roe v. Dep't of Def.*,
    947 F.3d 207 (4th Cir. 2020) ...................................................................14

*Rosetta Stone Ltd v. Google, Inc.*,
    676 F.3d 144 (4th Cir. 2012) ...........................................................15, 16

*Scotts Co. v. United Indus. Corp.*,
    315 F.3d 264 (4th Cir. 2002) ...................................................................19

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008)....................................................................................14

**Statutes**

15 U.S.C. § 1051 ..............................................................................................1

15 U.S.C. § 1057(b) .......................................................................................15

15 U.S.C. § 1114 ...........................................................................................14

iv

15 U.S.C. § 1114(a) ................................................................................................15

15 U.S.C. § 1125(a) ................................................................................................15

**Rules**

Fed. R. of Civ. P. 65................................................................................................14

Fed. R. of Civ. P. 65(c) ...........................................................................................23

**Other Authorities**

Ashely Soebroto, *Geese Police has "very effective" method of chasing geese
  away. It involves border collies*, BOSTON GLOBE (June 20, 2023 5:42 a.m.)*,
  available at* https://www.bostonglobe.com/2023/06/20/business/goose-loose-
  heres-who-call/.................................................................................................3

11A CHARLES ALAN WRIGHT ET AL., *Federal Practice & Procedure* § 2948.3 (2d
  ed. 1995) ........................................................................................................14

## I.    INTRODUCTION

Plaintiff GPI, LLC ("GPI" or "Franchisor") seeks injunctive relief to protect its intellectual property from its former franchisee, Patriot Goose Control Inc. ("PGC"), and Elliot Oren ("Oren," and together with PGC, "Defendants") who continue to use and benefit from the Geese Police Marks in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*[1] and refuse to comply with the post-expiration obligations in their Franchise Agreement, including a narrowly drafted non-compete.  Without injunctive relief, Franchisor will suffer loss of goodwill in its franchise system and brand—a paradigmatic example of an "irreparable" injury.  For these reasons, as set forth below, a preliminary injunction should be entered against Defendants.

## II.    STATEMENT OF FACTS

### A.    Franchisor Develops the Geese Police System

For over twenty years, Franchisor has been engaged in the franchising of a franchise system consisting of distinctive formats, designs, specifications, methods, standards, operating procedures and guidance for Canadian goose/bird control franchises, which use highly trained working border collies to herd Canadian geese off a client's property in a waterfowl-friendly manner ("Franchised Business").  Compl., ¶ 11.  With waterfowl protective statutes in place, the practices employed by the Franchised Business are one of the few means of dealing with messy Canadian geese in a lawful manner.  *Id.*

In the Franchised Business, Franchisor's primary trademark and service mark is the composite of the words GEESE POLICE® and the design as shown below:

---

[1] Capitalized terms used herein without definition have the same meanings given to them in the Verified Complaint.  As in the Verified Complaint, GPI refers to Patriot Goose Control Inc. or Patriot Goose Control LLC as the "Franchisee," for ease of reference.  Any reference to "Defendants" also includes Patriot Goose Control LLC to the extent applicable, depending on the date to which the allegation refers.



*Id.*, ¶ 13.  Since August 22, 2000, Geese Police, Inc. has permitted Franchisor to license the Composite Mark for use in the Franchised Business, and Franchisor has continuously used the Composite Mark as the trademark and service mark used to identify the Franchised Business.  *Id.*, ¶ 15.  Under the same arrangement with Geese Police, Inc., Franchisor also uses two additional federally registered trademarks and service marks: (1) CALL US TO . . . GET THE FLOCK OUT!®; and (2) GEESE POLICE®.  *Id.*, ¶¶ 16-18.  These three marks are collectively referred to herein as the "Geese Police Marks."  *Id.*, ¶ 19.

Franchisor also owns and uses distinctive business methods in the operation of the Franchised Business.  *Id.*, ¶ 20.  These distinctive business methods, together with the other benefits of being a franchisee, including use of the Geese Police Marks, shall hereinafter be referred to as the "Geese Police System."  *Id.*  As part of the Geese Police System, Franchisor provides its franchisees with training in Franchisor's methods of doing business and with the experience, expertise, and know-how of the Franchisor in the operation of the Franchised Business (collectively the "Geese Police Trade Secrets") to help the franchisees succeed with their own businesses.  *Id.*, ¶ 21.  The training and other aspects of the Geese Police System are also designed to promote and enhance the value of the Geese Police Marks and to encourage uniformity among the franchisees operating under the Geese Police Marks, which itself is beneficial to successful promotion of the Geese Police Marks and the franchisees operated thereunder.  *Id.*

Since the Franchisor began franchising in 1998, Franchisor has licensed the Geese Police Marks to its franchisees for use in specific geographic areas for the term of their franchise agreements.  *Id.*, ¶ 23.  Franchisor now has nine franchisees licensed throughout the United States (excluding the Defendants' former franchisee).  *Id.*, ¶ 12.  Franchisor also grants its franchisees the right to enjoy the benefits of using the Geese Police System and the Geese Police Trade Secrets.  *Id.*, ¶ 23.  Franchisees are not, however, authorized to use the Geese Police Marks, the Geese Police System, or the Geese Police Trade Secrets following the expiration or termination of their franchises.  *Id.*, ¶ 24.

For many years, Franchisor has spent large sums of money marketing and promoting the Geese Police Marks that have become identified with the Franchised Business by consumers and which use specially developed business methods that are proprietary and comprise the Geese Police System.  *Id.*, ¶ 25.  The Franchised Business has been the subject of significant national media coverage including without limitation NBC News, The Washington Post and Washington Times.  *Id.*, ¶ 26.  As a result of this extensive marketing and promotion, valuable goodwill has been developed in the franchised areas throughout the United States among consumers for the Geese Police Marks and the Geese Police System for services provided under the Geese Police Marks and the Geese Police System, identifying Franchisor as their sponsor and source.  *Id.*, ¶ 27.

In fact, Defendants themselves benefited from the goodwill and media interest in the Franchised Business.  *Id.*, ¶ 28.  A June 20, 2023 cover story published in the Boston Globe highlighted Defendants as both being part of the Geese Police System and using trained border collies in its "'proprietary system of harassment' to scare away geese creating a nuisance in public spaces," as Oren was quoted as saying to the newspaper.  *See* Ashely Soebroto, *Geese Police has "very effective" method of chasing geese away. It involves border collies*, Boston Globe (June

20, 2023 5:42 a.m.), *available at* https://www.bostonglobe.com/2023/06/20/business/goose-loose-heres-who-call/.

**B.      Defendants Became a Franchisee and Operated as Geese Police® of Boston Metro**

Oren has been involved with the Franchised Business since at least 2007.  Compl., ¶ 29.  Beginning in 2007, Oren started as a dog handler with Geese Police of Central Maryland, and he later expanded his role to become involved in the sales efforts for the Franchised Business.  *Id.*  In 2014, Oren became the owner of a Geese Police franchise in the Greater Boston Area.  *Id.*, ¶ 30.

At that time, Patriot Goose Control LLC and GPI entered into a Franchise Agreement on or about July 21, 2014 (the "Original Franchise Agreement").[2]  *Id.*  In the Franchise Agreement, the parties agreed that Defendants could conduct business operations of the Franchised Business in Suffolk, Norfolk, Middlesex Counties, eastern half of Worchester County (East of Routes 290/190) and northern halves of Bristol and Plymouth Counties (going north across the counties from Providence to Middleboro to Manomet) (the "Protected Territory").  *Id.*, ¶ 32.  From approximately July 21, 2014 to July 20, 2023, Defendants operated as a franchisee in the Protected Territory, as evidenced by their continuing use of the Geese Police System and Geese Police Marks while operating a Franchised Business.  *Id.*, ¶ 33.

Oren executed the Original Franchise Agreement as Managing Member of Patriot Goose Control LLC d/b/a Geese Police of Boston Metro.  *Id.*, ¶ 30.  Under Exhibit C to the Franchise Agreement, entitled Guarantee, Indemnification, and Acknowledgement, Oren also personally guaranteed that the obligations of the Franchisee under the Franchise Agreement would be performed, and acknowledged and agreed, among other things, to be bound individually by the

---

[2] The Original Franchise Agreement is attached as Exhibit D to Plaintiff's Verified Complaint.

franchisee's obligations upon termination and to the covenant not to compete (the "Personal Guarantee"). *Id.*, ¶ 34.

The parties have renewed the Franchise Agreement numerous times since Defendants became a franchisee, and most recently on July 26, 2021 for a two-year renewal period that extended from July 21, 2021 to July 20, 2023 under the same terms and conditions as set forth in the Original Franchise Agreement (the "Franchise Agreement Renewal").[3] *Id.*, ¶ 31.  In the Franchise Agreement Renewal, Oren again executed the contract, though this time on behalf of a new entity, Patriot Goose Control Inc. d/b/a Geese Police of Boston Metro. *Id.*  Both the Original Franchise Agreement and the Franchise Agreement Renewal are collectively referred to herein as the "Franchise Agreement." *Id.*

Under the Franchise Agreement, Franchisor granted Defendants the right (a) to establish and operate a franchised business under the System and using the Proprietary Marks and (b) to use the Proprietary Marks and the System solely in connection therewith. *Id.*, ¶ 35.  In exchange, Defendants agreed to pay a monthly royalty fee and deliver monthly reports to the Franchisor. *Id.*, ¶ 36.  Defendants further agreed to all other provisions of the Franchise Agreement, including the obligation to cease operating the Franchised Business and to cease using the Geese Police System and Geese Police Marks upon termination of the Franchise Agreement. *Id.*

With the consent of Franchisor and under the terms and conditions of the Franchise Agreement, Defendants operated a Franchised Business in the Protected Territory for approximately nine years. *Id.*, ¶ 37.  Throughout, Franchisor provided, or made available, to Defendants initial and ongoing training; trained border collies for use in the Franchised Business; a copyright-protected Confidential Operating Manual and periodic updates; operations and

---

[3] The Franchise Agreement Renewal is attached as Exhibit E to Plaintiff's Verified Complaint.

business support via direct telephone and email contact with Franchisor's Founder and President David C. Marcks; periodic visits aimed at increasing business opportunities; and regularly scheduled sales demos for prospective clients.  Franchisor also provided Defendants with a Geese Police email address, which they used until their access was recently terminated.  *Id.*  Defendants did not have any prior experience in the operation of Canadian goose/bird control business using highly trained working border collies before Oren became an employee of Geese Police of Maryland, and later, the owner of the Geese Police of Boston as a GPI franchisee.  *Id.*, ¶ 39.  Defendants essentially learned everything they know about the Franchised Business as a result of their participation in the Geese Police System and the training, business development, and operations support that they received from Franchisor.  *Id.*

Defendants operated their business as one the franchisees of GPI and enjoyed the benefits of use of the Geese Police Marks, the Geese Police System, and the Geese Police Trade Secrets without issue for approximately nine years.  *Id.*  Franchisor has fully performed its obligations under the Franchise Agreement as evidenced by the complete absence of default notices from the Defendants until now, when Defendants have attempted to manufacture a dispute to rid themselves of their post-expiration obligations under the Franchise Agreement.  *Id.*, ¶ 40.

C.    **Defendants Purport to Declare the Franchise Agreement "Null and Void"**

Defendants' Franchise Agreement with Franchisor expired by its own terms on or about July 20, 2023.  *Id.*, ¶ 41.  Since then, Defendants have continued to operate as a franchisee in the Protected Territory, as evidenced by their continuing use of the Geese Police System and Geese Police Marks while operating as if they were still a Franchised Business for GPI.  *Id.*, ¶¶ 46-61.

One month earlier, however, GPI received a letter from Defendants' counsel declaring that GPI's purported failures to provide training, marketing and promotional support, and written

advice on the conduct of the business, as well as to conduct period inspections, somehow rendered the Franchise Agreement's terms "null and void" as of the end date (the "June Letter").  *Id.*, ¶ 42. The June Letter also purported to declare that "both the definition of the 'System' and the noncompetition clause in the Agreement are overly broad and over inclusive, and thus unenforceable." *Id.*

For its part, GPI attempted to informally resolve this dispute before resorting to filing this lawsuit.  *Id.*, ¶ 43.  In August 2023, GPI's General Manager, Jeremy Brown, attempted to contact Oren to discuss with him rejoining the Geese Police System and the issues raised in the June Letter. *Id.*  But this outreach went unanswered, and in fact, only led Oren's counsel to resend the June Letter to GPI.  *Id.*

In a letter dated August 16, 2023, Franchisor sent Defendants a letter to remind them of their post-expiration obligations under the Franchise Agreement, including the requirement that they abide by the non-compete (the "August Letter").[4]  *Id.*, ¶ 44.  This outreach, too, went nowhere. *Id.*, ¶ 45.  And since then, Defendants have continued to flout the post-expiration obligations in the Franchise Agreement with impunity, joining several other former GPI franchisees engaged in an open revolt against the Franchised Business, with their unfounded copycat claims.  *Id.*

**D.    Defendants Are Legally and Contractually Obligated to Discontinue Using the Geese Police Marks and the Geese Police System and Return Confidential Material**

Upon expiration, the Franchise Agreement requires Defendants to fully comply with their post-expiration obligation set forth in Sections 15 and 16 of the Franchise Agreement and expressly enumerated in the August Letter.  *Id.*, ¶ 47.  Among other things, Defendants must immediately discontinue all use of the Geese Police Marks and the Geese Police System and to take all necessary steps to disassociate themselves from these items.  *Id.*

---

[4] The August Letter is attached as Exhibit F to Plaintiff's Verified Complaint.

### 1.      Defendants Must Disassociate from the Geese Police System

Section 15 of the Franchise Agreement—entitled Obligations Upon Termination or Expiration – sets forth a former franchisees' obligation upon termination or expiration, which, in any event, automatically terminate all rights granted to them under the Franchise Agreement.  *Id.*, ¶ 48.  Section 15.1, for instance, requires that "Franchisee shall immediately cease to operate the Franchised Business, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Franchisor."  *Id.*, ¶ 49.

Section 15.2 further requires immediate and permanent dissociation, upon expiration of the Franchise Agreement.  *Id.*, ¶ 50.  It states: "Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures, and techniques associated with the System; and the Proprietary Mark 'Geese Police' and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use, without limitation, all signs, advertising materials, displays, stationery, forms, products, and any other articles which display the Proprietary Marks."  *Id.*

### 2.      Defendant Must Abide by the Limited Non-Compete

Section 15.9 of the Franchise Agreement further provides that Franchisee shall comply with the covenants contained in Section 16.3 of this Agreement—namely the narrowly-drawn covenant not to compete.  *Id.*, ¶ 63.  Under Section 16.3 of the Franchise Agreement, Defendants agreed that the "Franchisee shall not, for a continuous uninterrupted period of two (2) years commencing upon . . . expiration of this Agreement . . . either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person or legal entity, own, maintain, operate, engage in, be employed by, provide assistance to, or have any interest in (as owner or otherwise) any business that: (i) involve the inhabitation of property by, and control of, birds and waterfowl; and (ii) is, or is intended to be, located at or within: [(a)] the county or municipality in which the

Approved Location is located; or [(b)] the Protected Territory; or [(c)] one hundred fifty (150) miles of the Approved Location; or [(d)] one hundred fifty (150) miles of any business operating under the Proprietary Marks[.]" *Id.*

**E.**     **Defendants Refuse to Disassociate or Abide by Their Post-Expiration Obligations**

Defendants have not complied with any of their post-expiration obligations, including to immediately discontinue all use of the Geese Police Marks and the Geese Police System and to take all necessary steps to disassociate themselves from these items. *Id.*, ¶ 46.  Instead, Defendants have, continued to use the Geese Police Marks and Geese Police System, and they have also refused to disassociate themselves completely from the Franchised Business, and to refrain from competing in business with the Franchisor.  *Id.*

In fact, Franchisor has confirmed that Defendants have not disassociated themselves and continue to operate as if they were an authorized Franchised Business by using Geese Police Marks since the Franchise Agreement naturally expired last month—all to Franchisor's detriment. *Id.*, ¶ 51.  Among other things, Defendants maintain a social media presence on Facebook for "Patriot Goose Control Inc."—a competing goose control business—which still uses the name "Geese Police" in its URL (https://www.facebook.com/geesepoliceboston) contains photographs that depict the Geese Police Marks, such as in the image depicted below:



*Id.*, ¶ 52.   Defendants also maintain a social media presence on Instagram in which they hold

himself out as being affiliated with Geese Police, such as in the image depicted below:



*Id.*, ¶ 53.  In addition to using the Composite Mark and the name "GEESE POLICE," the images posted by Defendants to Instagram also use the federally protected trademark and service mark—"GET THE FLOCK OUT"—as a hashtag in the comment to the post, as depicted below:



*Id.*, ¶ 54.  Defendants' Instagram page further links to the Boston Globe article describing his work as a Geese Police franchisee, just as recent as two months ago, again trading on and benefiting from the goodwill that the Franchisor has built in the Geese Police System for decades.  *Id.*, ¶ 55. In addition, Oren maintains a social media presence on LinkedIn (https://www.linkedin.com/in/elliot-oren-103b4835/), in which he holds himself out as still being the current owner of "Geese Police Boston Metro" under his "Experience."  *Id.*, ¶ 56.

As for Patriot Goose Control, Defendants maintain a website for this competing business (http://patriotgoosecontrol.com/) in which PGC likewise holds itself out as affiliated with the Franchise Business and also uses the Geese Police Marks.  *Id.*, ¶ 57.  On the "About Us" page (http://patriotgoosecontrol.com/aboutus), for example, it states that Patriot Goose Control has been operating since 2014—when Defendants became a Geese Police franchisee.  *Id.*, ¶ 58.  It then explicitly references "Geese Police and the "Geese Police Methods" in describing the company's highlight—and even goes so far as to link to the website for Geese Police Inc. to "find a Geese Police location near you" as depicted in the image below.



OUR COMPANY

Patriot Goose Control provides Canada goose control for businesses in the greater Boston / Worcester / Providence metropolitan area. Patriot Goose Control uses a proprietary system of harassment using trained border collies to produce and maintain a decrease of at least 90% in resident goose population. This is the only proven, humane, and environmentally friendly way of providing effective Canada goose control.

COMPANY HIGHLIGHTS

- Patriot Goose Control has been operating since 2014.
- Using highly trained border collies, Geese Police can permanently reduce the Canada goose population from any site by over 95%.
- Geese Police methods do not harm geese, and are approved by the US Fish & Wildlife Service and the Humane Society of America.

NOT LOCATED IN THE BOSTON AREA? FIND A GEESE POLICE LOCATION NEAR YOU HERE.

*Id.*, ¶ 59.  The "About Us" page also includes information about Defendants' trained border collies, which again, affiliates them with the Franchised Business by saying that "Blitz was a champion sheep herder before coming to work full-time for Geese Police" as depicted in the below:



*Id.*, ¶ 60.  Defendants' continued use of the Geese Police Marks, refusal to contravenes their post-term obligations under the Franchise Agreement and constitutes a violation of the Lanham Act.

In addition, Defendants continue to operate as if they were an authorized Franchised Business, including in the same territory as the Protected Territory in direct violation of the covenant not to compete contained in the Franchise Agreement.  *Id.*, ¶ 62.  Defendants also continue to service the same customer accounts using the Geese Police Marks and Geese Police System that they serviced prior to expiration.  *Id.*  In short, Defendants' continued operation of the Geese Police business in the same territory as the Protected Territory directly violates the covenant not to compete contained in the Franchise Agreement.

13

### III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions.  In the Fourth Circuit, a preliminary injunction will issue when (1) the movant is likely to succeed on the merits; (2) the movant is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in movant's favor; and (4) granting a preliminary injunction would be in the public interest.  *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 211 (4th Cir. 2019) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).

### IV.    ARGUMENT

**A.    Franchisor is Likely to Succeed on the Merits of Its Claims**

A party seeking a preliminary injunction must "demonstrate[ ] a likelihood of success of the merits of at least one claim." *Roe v. Dep't of Def.*, 947 F.3d 207, 234 (4th Cir. 2020).  Although this "requires plaintiffs seeking injunctions to make a 'clear showing' that they are likely to succeed at trial, plaintiffs need not show a certainty of success." *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013) (citing 11A CHARLES ALAN WRIGHT ET AL., *Federal Practice & Procedure* § 2948.3 (2d ed. 1995)) (internal citation omitted); *see also League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (movant "need not show a certainty of success") (quoting *Pashby*, 709 F.3d at 321).   The Franchisor easily meets that threshold requirement here as to its claims under the Lanham Act and for breach of the Franchise Agreement's narrow covenant not to compete.

> **1.    Counts I & II:  The Lanham Act Claims for Trademark and Service Mark Infringement and Unfair Competition**

Franchisor can win on the merits of its claim for trademark and service mark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, at Count I; and for unfair competition

under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) at Count II.  Both claims require a plaintiff to establish "(1) that it owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers."  *Rosetta Stone Ltd v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (quoting 15 U.S.C. § 1114(a)).

### a.      The Federally Registered Geese Police Marks are Incontestable

In proving trademark infringement under the Lanham Act, the plaintiff first must establish that it owns a valid mark.  *Id.*  "Under the Lanham Act, the issuance of a certificate of registration arms the registrant with 'prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark.'"  *Retail Servs.*, *Inc. v. Freebies Publ'g*, 364 F.3d 535, 542 (4th Cir. 2004)) (quoting 15 U.S.C. § 1057(b) (certificate of registration is *prima facie* evidence of validity of registered mark)); *see also Cmty. First Bank v. Cmty. Banks*, No. CIV. RDB 04-1359, 2005 WL 1204589, at *3 (D. Md. May 20, 2005) (same).  As set forth in the Verified Complaint, the Geese Police Marks have all been registered with the United States Patent and Trademark Office and licensed by Franchisor for use in the Franchised Business.  No dispute therefore exists as to the ownership and validity of the marks.

### b.      Defendants Have No Authorization to Use the Geese Police Marks

Franchisees are not authorized to use the Geese Police Marks or the Geese Police System following the expiration of their franchises.  Franchisor reminded Defendants of this contractual requirement in the August Letter, instructing them to immediately discontinue all use of the Geese Police Marks and the Geese Police System and to take all necessary steps to disassociate themselves from these items.  Defendants are nevertheless still using the Geese Police Marks and

the Geese Police System even though the Franchise Agreement has expired, and Franchisor no longer consents to Defendants' use of the Geese Police Marks and the Geese Police System. Franchisor therefore easily meets its burden to show that Defendants used the mark in commerce and without Franchisor's authorization.

### c.   Defendants Still Use the Marks in Their Sales and Marketing Efforts

Franchisor likewise satisfies the third element that Defendants used the Geese Police Marks in connection with the sale, offering for sale, distribution, or advertising of goods or services. Defendants' own website still associates themselves as "Geese Police" and includes numerous images that depict the Geese Police Marks, even after GPI issued the August Letter post-expiration.  Moreover, Defendants also maintain an active social media presence in which they hold themselves out as being affiliated with Geese Police, all while using the Geese Police Marks. Again, no dispute exists on this element of Franchisor's claims under the Lanham Act.

### d.   Defendants' Infringement Causes Consumer Confusion

Finally, Franchisor satisfies the fourth element: that the Defendants' use of the marks is likely to confuse consumers.  While the Fourth Circuit has established nine non-exhaustive factors when analyzing likelihood of confusion, "[t]hese 'factors are not always weighted equally, and not all factors are relevant in every case.'" *Rosetta Stone*, 676 F.3d at 153–54 (quoting *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259–60 (4th Cir. 2007)).  "Indeed, several courts have held that when a party continues using a trademark after the license authorizing such use has expired, that factual scenario *alone* 'satisfies the likelihood of confusion test and constitutes trademark infringement,' without analyzing each specific factor separately."  *R/C Theatres Mgmt. Corp. v. Metro Movies, LLC*, 44 F. Supp. 3d 626, 635 (D. Md. 2014) (quoting *Merry Maids Ltd. P'ship v. Kamara*, 33 F. Supp. 2d 443, 445 (D. Md. 1998)) (emphasis in original). In other words, a court may presume that a likelihood of confusion exists in that scenario. *Mayson-*

*Dixon Strategic Consulting, LLC v. Mason-Dixon Polling & Strategic Consulting*, Inc., 324 F. Supp. 3d 569, 579–80 (D. Md. 2018).

"In the context of franchise cases specifically, courts have found a high risk of consumer confusion when a terminated franchisee continues to use the former franchisor's trademark." *ICENY USA, LLC v. M & M's, LLC*, 421 F. Supp. 3d 204, 217 (D. Md. 2019). And "[t]his potential for confusion is particularly acute following the termination of a franchisor-franchisee relationship because of the parties' past affiliation and the ease of their association in the public's mind." *Id.* In short, "[b]ecause any shortcomings of the franchise would be attributed to the franchisor, continued trademark use by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement." *Id.* (citation omitted).

Here, again, the allegations in the Verified Complaint are sufficient to show that Defendants continue to use the identical Geese Police Marks after expiration of the Franchise Agreement. No dispute exists, then, on any element of Franchisors' claims under the Lanham Act. In short, because of the incontestable ownership and validity of the marks, along with the inevitable finding of likelihood of confusion from Defendants' unauthorized use since the expiration of the Franchise Agreement, Franchisor has met its burden of showing a probability of success on the merits of its claims for trademark and service mark infringement and unfair competition.

### 2. Count III: Breach Of Franchise Agreement – Violation Of The Covenant Not To Compete

Franchisor can also prevail on the merits of its claim for breach of the Franchise Agreement for Defendants' ongoing violations of the covenant not to compete. Upon its expiration, the Franchise Agreement bars Defendants, for a period of two years, either directly or indirectly owning, maintaining, operating, engaging in, being employed by, providing assistance to, or having any interest in (as an owner or otherwise) any business that: (i) involve the inhabitation of

17

property by, and control of, birds and waterfowl; and (ii) is, or is intended to be, located at or within: (a) the county or municipality in which the Approved Location is located; or (b) the Protected Territory; or (c) one hundred fifty (150) miles of the Approved Location; or (d) one hundred fifty (150) miles of any business operating under the Proprietary Marks.  This narrowly drawn covenant is enforceable here against Defendants on a preliminary injunction.

New Jersey law applies to Franchise Agreement, and in that state, "noncompete covenants in franchise agreements are often viewed like agreements ancillary to the sale of a business in that the franchisee is in a more equitable bargaining situation than the typical employer-employee relationship." *Housemaster SPV LLC, v. John T. Burke, Jr.*, No. CV2113411MASTJB, 2022 WL 2373874, at *6 (D.N.J. June 30, 2022) (construing New Jersey law) (internal quotations and citation omitted).  This means that courts "are more likely to find the covenants reasonable and valid" because "the primary characteristic of a franchise is the license given to the franchisee to trade upon and exploit the franchisor's good will."  *Id.* (citation omitted). Indeed, New Jersey courts have found a likelihood of success on the merits in a restrictive covenant by a franchisor where, as here, a former franchisee continues to operate post-agreement.  *See id.*[5]  The Verified Complaint establishes that Defendants still operate the Franchised Business in the same Protected Territory using the Franchisor's Geese Police Marks, the Geese Police System, and the Geese Police Trade Secrets.  Defendants also still hold themselves out as affiliated with the Franchisor, including on their own website and social media pages.  As one New Jersey district court has explained, "[f]or the purposes of a preliminary injunction, the analysis of the merits prong ends

---

[5] Under Maryland law, non-competes in Franchise Agreements are enforceable where, as here, the provision is limited to the type of business that Defendants operated as a former franchisee and confined to a radius sensible for that particular industry.  *See, e.g.*, *NaturaLawn of Am., Inc. v. W. Grp., LLC*, 484 F. Supp. 2d 392, 401 (D. Md. 2007) (holding there is likelihood of success on the merits under Maryland law as to two-year non-compete prohibiting operation of a law care service in the counties covered by the Franchise Agreement).

there." *Id.* at *7.  Franchisor has met the element of likelihood of success on the merits of its breach of contract claim for the violation of the non-compete for a preliminary injunction to issue.

**B.      Franchisor Will Suffer Irreparable Harm Without Injunctive Relief**

"To establish irreparable harm, the movant must make a 'clear showing' that it will suffer harm that is 'neither remote nor speculative, but actual and imminent.'" *Mountain Valley Pipeline*, 915 F.3d at 216 (citing *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)).  Franchisor again meets this requirement.

"In trademark infringement cases, 'a presumption of irreparable injury is generally applied once the movant has demonstrated a likelihood of confusion' because of the inherent injury to goodwill and the reputation of the moving party." *ICENY USA, LLC*, 421 F. Supp. 3d at 221 (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002)).  Indeed, "[m]onetary damages often do not accurately measure or compensate for damage to a [plaintiff's] reputation and goodwill." *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 868 F. Supp. 2d 468, 497 (D. Md. 2012).  And "[t]he likelihood of continued infringement [also] renders monetary damages inadequate." *Id.*  This all makes good sense: without an injunction, a plaintiff would suffer continued infringement and be forced to bring successive suits to continuously recover damages from the Defendant's infringing use. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797, 800 (4th Cir. 2001) (trademark infringement is a continuing tort and injunction is warranted if there is a reasonable expectation that infringement will continue); *Innovative Value Corp. v. Bluestone Fin., LLC*, No. 09–cv–0111–DKC, 2009 WL 3348231, *3 (D. Md. Oct. 15, 2009) (same).

As for violations of a non-compete provision, courts in this District have also "held that a former franchisee's operation of a similar or the same business following termination of the franchise agreement results in irreparable harm to the franchisor." *Ledo Pizza Sys., Inc. v. Singh*,

983 F. Supp. 2d 632, 642 (D. Md. 2013).  *See also NaturaLawn of Am., Inc. v. W. Grp., LLC*, 484

F. Supp. 2d 392, 401 (D. Md. 2007) (finding irreparable harm prong satisfied where a former

franchisee infringed the franchisor's trademark and blatantly ignored the non-compete provisions

in its agreements); *Meineke Car Care Centers, Inc. v. Bica*, No. 3:11-CV-369-FDW-DCK, 2011

WL 4829420, at *5 (W.D.N.C. Oct. 12, 2011) (finding irreparable harm prong satisfied through a

former franchisees' unauthorized use of trademarks and violation of a non-compete "if Defendants

use the knowledge, manner, and training obtained through the former Franchise Agreement

relationship to gain customers within the restricted area").  And just like with the trademark

infringement, "[n]o amount of damages can quantify the potential loss to [a franchisor's] goodwill

and its reputation, and failure to enforce the non-compete could send a dangerously damaging

signal to other franchisees." *JTH Tax, Inc. v. Geraci*, No. 2:14CV236, 2014 WL 4955373, at *8

(E.D. Va. Oct. 2, 2014).

GPI is likewise left without an adequate remedy at law to address the violations in this

case.  Despite their post-expiration obligations under the Franchise Agreement, Defendants are

still actively competing against Franchisor in the Protected Territory.  And, making matters worse,

Defendants are doing so by trading on the reputation and goodwill of the Franchisor, including

through its unauthorized use of the Geese Police Marks and the Geese Police System.  Absent

injunctive relief, Franchisor will lose any ability to control and enforce the Franchised Business's

operations, standards, and procedures in the Protected Territory, and its customers will be deceived

into believing that Defendants' business is an authorized Geese Police franchise when, in fact, it

is not.  This ultimately endangers the satisfaction and expectations of Franchisor's customers,

dilutes the value of the franchises held by other franchisees, and inevitably leads to the loss of

reputation associated with the Geese Police Marks.  For these reasons, the record demonstrates a clear likelihood of irreparable harm satisfying the second element for injunctive relief.

## C.    Significant Injury To Franchisor Outweighs Any Harm To Defendants

The balance of equities falls in favor of a plaintiff where, as here, any harm an infringing defendant may suffer would be self-inflicted.  *Ledo Pizza Sys., Inc.*, 983 F. Supp. 2d at 640.  This includes when a defendant has no right to "hold itself out, through name, signage, or otherwise, as affiliated with Plaintiff, and Defendants are profiting unjustly thereby."  *Living Legends Awards for Serv. to Human., Inc. v. Hum. Symphony Found., Inc.*, No. CV PX 16-3094, 2017 WL 3868586, at *6 (D. Md. Sept. 5, 2017) (internal quotations and citation omitted).  An infringer who "possesses no legal right to continue its current course of conduct," then, "cannot claim hardship from an injunction restraining that which it is legally prohibited from doing."  *Dewberry Engineers Inc. v. Dewberry Grp., Inc.*, No. 1:20-CV-610-LO-IDD, 2022 WL 1439105, at *4 (E.D. Va. May 6, 2022), *aff'd*, No. 22-1622, 2023 WL 5062022 (4th Cir. Aug. 9, 2023) (citation omitted).  This same analysis holds true for violations of a non-competition agreement by a former franchisee.  In this District, courts hold that the balance of equities weigh against a former franchisee, even though they may lose their business, where any harm suffered was "self-inflicted and a predictable consequence of their own willful acts of breaching their contractual agreements."  *ICENY USA, LLC*, 421 F. Supp. 3d at 223 (internal quotation and citation omitted).

Absent injunctive relief, Franchisor will suffer considerable hardship through injury to its goodwill, lost customers in the Protected Territory, and an inability to have those customers serviced by an existing or new franchisee in the former territory.  Defendants, by contrast, only need to abstain from further use of the Geese Police Marks, Geese Police System, or the Geese Police Trade Secrets as they agreed upon in the Franchise Agreement.  This harm that Defendants wrought on themselves—after warning and attempted intervention by the Franchisor itself—pales

in comparison to the irreparable injury to Franchisor's ongoing loss of goodwill, and at any rate, "any potential hardship Defendants face have been created by their own willful acts in breaching the [Franchise] Agreement." *Cap. One Fin. Corp. v. Sykes*, No. 3:20CV763, 2021 WL 2903241, at *15 (E.D. Va. July 9, 2021). This is particularly true where, as here, a franchisor attempted to work with the former franchisee pre-suit, despite any economic hardship that the franchisee may now suffer. *Ledo Pizza Sys., Inc.*, 983 F. Supp. 2d at 640. Defendants likewise "could have continued to operate their business as a franchisee," or even "entered into negotiations to sell their business[ ]." *NaturaLawn of Am., Inc.*, 484 F. Supp. 2d at 402. But "they chose to ignore altogether their obligations under the Franchise Agreements and, instead, to move forward with a competing business, thereby 'rolling the dice' that injunctive judicial relief would permit them to continue their evident wrongdoing during the pendency of the case." *Id.* And "[t]hey cannot now avoid enforceable agreements because they will be harmed as shown here, harm that is self-inflicted." *Id.* A preliminary injunction should therefore issue for Franchisor to protect against further acts of infringement by Defendants, as well as against continued breaches of their post-expiation obligations, including the temporary prohibition against competition.

## D.     Franchisor's Requested Injunctive Relief Is In The Public Interest

By declaring the Franchise Agreement to be "null and void," Defendants "purposely entered into a course of action, based on thin legal arguments, that sought to avoid contractual obligations." *NaturaLawn of Am., Inc.*, 484 F. Supp. 2d at 404. This course of action weighs heavily against them here: "[i]t is in the public interest to repudiate this type of activity and enforce valid contracts," as well as "to validate the interests of mark owners and the proprietary nature of trade secrets." *Id.* This factor supports the requested relief.

As a practical matter, however, "if a plaintiff proves both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest favors

preliminary relief." *Issa v. School District of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017) (internal quotations and citation omitted).  This is such a case: GPI has demonstrated both a likelihood of success on the merits and irreparable injury.  The issuance of an injunction will therefore further the public interest to protect the public from confusion; to protect the interests of the trademark owner; and to ensure the valid Franchise Agreement is enforced.

**E.    GPI Will Post a Reasonable Bond**

Under Federal Rule of Civil Procedure 65(c), a preliminary injunction may issue once "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  GPI submits that an appropriate bond amount would be Defendants' approximate net proceeds for one-year.  GPI therefore submits that an injunction bond in the amount of $350,000 would be appropriate as it is expected that this matter should be fully resolved in the next year, and this bond amount represents any potential loss to Defendants.

**V.    CONCLUSION**

For the foregoing reasons, Franchisor respectfully request that the Court grant a preliminary injunction against Defendants in terms substantially similar to those in the accompanying Proposed Order.

Respectfully submitted,

Dated:  August 29, 2023          BUCHANAN INGERSOLL & ROONEY PC

                                 /s/ Gretchen L. Jankowski

                                 Gretchen L. Jankowski (MD Fed. Bar No. 19473)
                                 Matthew C. Pilsner (*pro hac vice motion forthcoming*)
                                 Union Trust Building
                                 501 Grant Street, Suite 200
                                 Pittsburgh, PA 15219
                                 412-562-8800 (o)
                                 412-562-1041 (f)
                                 gretchen.jankowski@bipc.com
                                 matthew.pilsner@bipc.com

                                 Karima Tawfik (MD Fed. Bar No. 30624)
                                 1700 K Street, NW, Suite 300
                                 Washington, D.C. 20006
                                 202-452-7996 (o)
                                 202-452-7989 (f)
                                 karima.tawfik@bipc.com

                                 *Attorneys for GPI, LLC*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on this 29th day of August 2023, the foregoing document was sent to

the process server for personal service upon Defendants at the following address:

Patriot Goose Control, Inc.
c/o Elliot Oren, President
824 The Old Station Court
Woodbine, MD 21797

Elliot Oren, Individually
824 The Old Station Court
Woodbine, MD 21797

I also certify that a courtesy copy of the foregoing was served upon Craig E. Yaris, Esq.

by e-mail:

Craig E. Yaris, Esq.
Holon Law Partners
cyaris@holonlaw.com

*Attorneys for Defendants Patriot Goose Control
Inc. and Elliot Oren*

BUCHANAN INGERSOLL & ROONEY PC

/s/ Gretchen L. Jankowski
Gretchen L. Jankowski, Esq.
*Counsel for Plaintiff GPI, LLC*